UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY BAUMGARDNER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-3593 |
| | ) | |
| M&T BANK, | ) | Hon. George C. Smith |
| | ) | |
| Defendant | ) | |

## <u>M&T BANK'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT</u>

Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, Manufacturers and Traders

Trust Company a/k/a M&T Bank ("M&T") answers the complaint of Gregory Baumgardner as

follows:

## I.  INTRODUCTION

1.  Plaintiff Gregory Baumgardner ("Mr. Baumgardner") applied for a loan
modification with M&T Bank that was facially complete on July 30, 2018. Doing so triggers M&T
Bank's obligation to review his application before filing a foreclosure action. Despite this, M&T
Bank filed a foreclosure action against Mr. Baumgardner in direct violation of the Real Estate
Settlement Procedures Act ("RESPA") and Regulation X, 12 C.F.R. § 1024.41(f)(2). M&T Bank
continued to fail its obligations under RESPA, which ultimately resulted in an unlawful foreclosure
judgment against Mr. Baumgardner. Mr. Baumgardner now sues for damages for M&T Bank's
unlawful conduct.

**<u>ANSWER:</u>**  M&T denies that Baumgardner submitted a facially complete application

on or before July 30, 2018. M&T admits that Baumgardner is suing for damages but denies that

M&T's conduct was wrongful, that Baumgardner has brought a valid complaint, and that

Baumgardner has suffered any damages proximately caused by M&T. The remainder of this

paragraph constitutes a legal conclusion to which no response is required. To the extent that a

response is required, M&T denies the allegations in this paragraph.

## II. PRELIMINARY STATEMENT

2.      Plaintiff institutes this action for actual damages, statutory damages, attorney fees, and the costs of this action against Defendant for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* and Regulation X, 12 C.F.R. § 1024.

**ANSWER:**    M&T admits that Baumgardner has brought an action for actual damages, statutory damages, attorneys' fees, and costs for purported violations of RESPA but denies that M&T violated RESPA and Baumgardner is entitled to any of the relief sought.

## III. JURISDICTION

3.      This Court has subject matter jurisdiction over Count One under RESPA, 12 U.S.C. 2614, and 28 U.S.C. 1331 and 1337.

**ANSWER:**    Admitted.

4.      The Court has personal jurisdiction over Defendant because Defendant transacts business within this District, the loan at issue was incurred within this District, and the property which was the subject of the loan at issue is located within this District. *International Shoe v. Washington,* 326 U.S. 310 (1945).

**ANSWER:**    Admitted.

5.      Venue is proper in accordance with 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and the property is located in this judicial district.

**ANSWER:**    Admitted.

## IV. PARTIES

6.      Plaintiff is a natural person currently residing within this Court's jurisdiction at 105 Zellers Lane, Pataskala, Ohio 43062.

**ANSWER:**    M&T lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

7.      At all relevant times, Plaintiff was and is a "person" within the meaning of RESPA at 12 U.S.C. § 2602(5).

**ANSWER:**    This paragraph constitutes a legal conclusion to which no response is required.

81637776v.1

8.      At all relevant times, Plaintiff was and is a "borrower" within the meaning of RESPA.

**ANSWER:**    This paragraph constitutes a legal conclusion to which no response is required.

9.      Defendant is a company organized under the laws of the United States of America with its principal place of business in New York.

**ANSWER:**    M&T admits that it is trust company organized under the laws of the State of New York and with a principal place of business in the State of New York. M&T denies the allegations of this paragraph to the extent that they are inconsistent with the admissions made herein.

10.     At all relevant times, Defendant was and is a "person" within the meaning of RESPA, 12 U.S.C. § 2602(5).

**ANSWER:**    This paragraph constitutes a legal conclusion to which no response is required.

11.     At all relevant times, Defendant was and is a loan "servicer" of Plaintiff's "federally related mortgage loan" within the meaning of those terms in RESPA respectfully at 12 U.S.C. §§ 2605(i)(2) and 2602(1).

**ANSWER:**    This paragraph constitutes a legal conclusion to which no response is required.

12.     At all relevant times, Defendant was engaged in "servicing" within the meaning of RESPA, 12 U.S.C. § 2605(i)(3).

**ANSWER:**    This paragraph constitutes a legal conclusion to which no response is required.

## V.      FACTUAL ALLEGATIONS

13.     Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

**ANSWER:** M&T re-states and re-alleges its answers to paragraphs 1-12 as though stated fully herein.

14. Each action or inaction alleged herein against Defendant is also an allegation of action or inaction by Defendant's agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

**ANSWER:** M&T admits that Baumgardner is attempting to plead that the allegations against M&T are also allegations against its agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate but denies that Baumgardner has properly brought allegations against any of those persons or entities.

15. On or around April 6, 2007, Plaintiff financed the residential real property located at 105 Zellers Lane, Pataskala, Ohio 43062 ("Home") with a note secured by a mortgage (collectively the "Mortgage Loan").

**ANSWER:** M&T admits that on or about April 6, 2007, Baumgardner executed a note (the "Note") secured by a mortgage (the "Mortgage" and together with the Note, the "Loan") on the property located at 105 Zellers Lane, Pataskala, Ohio (the "Property").

16. Plaintiff financed the Home through Defendant, and the terms included an interest rate of 6.375% and a ten-year period where Plaintiff was only required to pay the interest on the loan.

**ANSWER:** M&T denies that the original terms of the Note included a 6.375% interest rate but admits that the Note Modification Agreement entered into on or about January 16, 2008 (the "Modification") provided for a fixed interest rate of 6.375%. M&T admits that the Modification provided for 10 years of interest-only payments but denies that the Note provided for 10 years of interest-only payments.

17. Plaintiff was laid off his primary job in 2015.

**ANSWER:** M&T lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

18. Plaintiff was laid off his secondary job in 2016.

**ANSWER:** M&T lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

19.     Plaintiff called Defendant seeking help with the mortgage payments.

**ANSWER:** To the extent that this paragraph intends to imply that Baumgardner called M&T in 2016 or 2017 to discuss help on his mortgage payments, the allegation is denied. M&T admits that it had phone calls with Baumgardner in 2018 regarding his mortgage payments.

20.     Defendant suggested Plaintiff apply for a loan modification.

**ANSWER:** M&T admits that it sent correspondence to Baumgardner in 2018 suggesting that a loan modification (among other things) could help Baumgardner with his delinquency.

21.     In 2017, the interest only period on the loan ended, and Plaintiff's monthly mortgage payments increased from One Thousand Eight Hundred and Six Dollars and Twenty Five Cents ($1,806.25) to Two Thousand Five Hundred and Nine Dollars and Ninety Nine Cents ($2,509.99).

**ANSWER:** Denied. The interest-only period ended in 2018.

22.     Defendant told Plaintiff that Defendant would not move forward with a foreclosure lawsuit while Plaintiff was being considered for a loan modification.

**ANSWER:** Denied.

23.     Plaintiff submitted a loss mitigation application ("First Application") to Defendant on or around July 30, 2018, which included a letter explaining Plaintiff's financial hardship; a completed "Borrower Financial Report"; a completed 4506-T; proof of income; accounting of Plaintiff's bank account transactions for the prior three months, et cetera.

**ANSWER:** M&T admits that Baumgardner submitted an application for loss mitigation on or about July 30, 2018 but denies that the application was complete. Specifically, the application was missing a completed 4506-T, proof of rental income, and proof of deposit.

24.     Defendant sent Plaintiff a letter on or around July 30, 2018.

**ANSWER:** Admitted.

81637776v.1

25. Defendant's July 30, 2018 letter confirmed receipt of Plaintiff's First Application.

**ANSWER:** The allegations of this paragraph purport to describe the contents of a letter that speaks for itself. To the extent Baumgardner has mischaracterized the contents of the letter, M&T denies the allegations of this paragraph.

26. Defendant's July 30, 2018 letter did not notify Plaintiff whether the First Application was complete.

**ANSWER:** The allegations of this paragraph purport to describe the contents of a letter that speaks for itself. To the extent Baumgardner has mischaracterized the contents of the letter, M&T denies the allegations of this paragraph.

27. Defendant's July 30, 2018 letter did not request additional documents.

**ANSWER:** The allegations of this paragraph purport to describe the contents of a letter that speaks for itself. To the extent Baumgardner has mischaracterized the contents of the letter, M&T denies the allegations of this paragraph. Answering further, on July 31, 2018, M&T sent a letter to Baumgardner stating that the application was incomplete and stating the documents needed to complete the application.

28. Defendant later requested additional documents from Plaintiff.

**ANSWER:** Admitted.

29. The aforementioned documents were due to Defendant on August 30, 2018.

**ANSWER:** Admitted.

30. Defendant sent Plaintiff a letter stating that all communications concerning the mortgage must be directed to Defendant's attorney on or around August 7, 2018.

**ANSWER:** Admitted.

31. Defendant filed a lawsuit to foreclose on the Home on or around August 20, 2018 in the Licking County Court of Common Pleas.

**ANSWER:** Admitted

81637776v.1

32.     Defendant filed a Motion for Summary Judgment on or around January 16, 2019.

**ANSWER:**     Admitted.

33.     Plaintiff submitted a loss mitigation application ("Second Application") to Defendant on or around January 17, 2019.

**ANSWER:**     Admitted.

34.     Defendant sent Plaintiff a letter on or around January 17, 2019.

**ANSWER:**     Admitted.

35.     Defendant's January 17, 2019 letter confirmed receipt of Plaintiff's Second Application.

**ANSWER:**     The allegations of this paragraph purport to describe the contents of a letter that speaks for itself. To the extent Baumgardner has mischaracterized the contents of the letter, M&T denies the allegations of this paragraph.

36.     Defendant's January 17, 2019 letter did not request additional documents.

**ANSWER:**     The allegations of this paragraph purport to describe the contents of a letter that speaks for itself. To the extent Baumgardner has mischaracterized the contents of the letter, M&T denies the allegations of this paragraph. Answering further, on January 18, 2019, M&T sent a letter to Baumgardner stating that the application was incomplete and stating the documents needed to complete the application.

37.     Defendant's January 17, 2019 letter did not notify Plaintiff whether the Second Application was complete.

**ANSWER:**     The allegations of this paragraph purport to describe the contents of a letter that speaks for itself. To the extent Baumgardner has mischaracterized the contents of the letter, M&T denies the allegations of this paragraph. Answering further, on January 18, 2019, M&T sent a letter to Baumgardner stating that the application was incomplete and stating the documents needed to complete the application.

81637776v.1

38.     Defendant later requested additional documents from Plaintiff.

**ANSWER:**     Admitted.

39.     The aforementioned documents were due to Defendant on February 17, 2019.

**ANSWER:**     Admitted.

40.     On or around February 4, 2019, Plaintiff sent Defendant documents in response to Defendant's January 18, 2019 request for documents.

**ANSWER:**     Denied. M&T admits that documents were received on February 5, 2019.

41.     Defendant did not respond in writing to Plaintiff's February 4, 2019 submission of documents.

**ANSWER:**     Denied. Answering further, on February 26, 2019, M&T sent Baumgardner

a letter denying the application for loss mitigation.

42.     Plaintiff submitted a loss mitigation application ("Third Application") on or around March 24, 2019.

**ANSWER:**     Denied. M&T admits that documents were received on or about March 26,

2019.

43.     On or around March 28, 2019, Defendant sent Plaintiff a letter asking for additional documents: two most current months of complete bank statement for all bank accounts, bank statements for account ending in #0354 for February and March of 2019, proof of rental income and deposit, and a lease signed by landlord and tenant.

**ANSWER:**     Admitted.

44.     The aforementioned documents were due to Defendant on April 17, 2019.

**ANSWER:**     Admitted.

45.     Plaintiff sent documents to Defendant on April 15, 2019 in response to this request.

**ANSWER:**     M&T admits that it received documents from Baumgardner on or about

April 15, 2019, but denies that the submission was complete.

46.     Plaintiff continually supplied Defendant with documents as they were updated and became available on May 29, 2019; June 16, 2019; June 7, 2019; June 18, 2019; and July 1, 2019.

**ANSWER:** M&T admits that it received documents from Baumgardner on or about the dates indicated above but denies that the submissions were complete and that Baumgardner "continually supplied Defendant with documents."

47. Defendant did not respond in writing to Plaintiff's submission of documents to ask for more documents.

**ANSWER:** Denied.

48. Defendant did not respond in writing to Plaintiff's submission of documents to approve or deny Plaintiff's Third Application.

**ANSWER:** Denied.

49. On or around May 2, 2019, the state court entered a decree of foreclosure ("Foreclosure") at Defendant's request.

**ANSWER:** Admitted.

50. On or around June 19, 2019, a private selling officer order of sale and order of appraisal was issued to the Licking County Sheriff for the Foreclosure at Defendant's request.

**ANSWER:** Admitted.

51. On or around July 31, 2019, the state court entered a notice of sale of the Home.

**ANSWER:** Admitted.

52. As a result of Defendant's actions, Plaintiff's home was unjustly foreclosed upon.

**ANSWER:** Denied.

53. As a result of Defendant's actions, Plaintiff suffers severe emotional distress, including anxiety, stress, and sleepless nights.

**ANSWER:** M&T denies that any of its actions were wrongful, and therefore denies the allegation that it caused Baumgardner's purported emotional distress, including any purported anxiety, stress, or sleepless nights. M&T lacks knowledge or information sufficient to form a belief about the truth of the allegation that Baumgardner actually suffered any emotional distress.

54. As a result of Defendant's actions, Plaintiff incurred the legal fees and expenses of bringing this lawsuit and defending the aforementioned foreclosure lawsuit.

**ANSWER:** M&T denies that any of its actions were wrongful, and therefore denies the allegation that it caused Baumgardner to incur legal fees or expenses related to this lawsuit, or the foreclosure lawsuit. M&T lacks knowledge or information sufficient to form a belief about the truth of the allegation that Baumgardner actually incurred any legal fees.

## VI.    FIRST COUNT — RESPA LOSS MITIGATION

55.    Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

**ANSWER:** M&T re-states and re-alleges its answers to paragraphs 1-54 as though stated fully herein.

56.    Defendant's actions described in this Complaint constitute violations of RESPA, 12 U.S.C. § 1601, *et seq.,* and Regulation X, and 12 C.F.R. § 1024.41.

**ANSWER:** This paragraph constitutes a legal conclusion to which no response is required. To the extent that a response is required, it is denied.

57.    Plaintiff's First Application was facially complete on or around July 30, 2018, pursuant to 12 C.F.R. § 1024.41(c)(2)(iv).

**ANSWER:** Denied.

58.    By failing to evaluate Plaintiff for all loss mitigation options available in response to the First Application, Defendant violated Regulation X, 12 C.F.R. § 1024.41(c)(1)(i).

**ANSWER:** Denied.

59.    By failing to send Plaintiff notice within thirty days after receiving the First Application informing Plaintiff of all loss mitigation options, Defendant violated Regulation X, 12 C.F.R. § 1024.41(c)(1)(n).

**ANSWER:** Denied.

60.    By failing to exercise reasonable diligence in obtaining documents and information to allegedly complete the First Application, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(1).

**ANSWER:** Denied.

61.     By proceeding with a foreclosure action despite Plaintiff's pending First Application, Defendant violated RESPA and Regulation X, 12 C.F.R. § 1024.41 *et seq.*

**ANSWER:**     Denied.

62.     By filing suit to foreclose on the Home despite Plaintiff's pending First Application, Defendant violated Regulation X, 12 C.F.R. § 1024.41(f)(2).

**ANSWER:**     Denied.

63.     By moving for summary judgment in the Foreclosure, Defendant violated Regulation X, 12 C.F.R. § 1024.41(g).

**ANSWER:**     Denied.

64.     The Second Application was facially complete on or about January 17, 2019, pursuant to 12 C.F.R. § 1024.41(c)(2)(iv).

**ANSWER:**     Denied.

65.     By failing to exercise reasonable diligence in obtaining documents and information to allegedly complete the Second Application, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(1).

**ANSWER:**     Denied.

66.     By failing to respond to Plaintiff's February 4, 2019 production of documents within five days, Defendant violated Regulation X, 12 C.F.R. §1024.41(c)(3).

**ANSWER:**     Denied.

67.     By failing to provide Plaintiff with notice that the Second Application was complete, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(B).

**ANSWER:**     Denied.

68.     By failing to promptly, upon receipt, evaluate the Second Application to determine if it was complete, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(A).

**ANSWER:**     Denied.

69.     By failing to evaluate Plaintiff for all loss mitigation options available in response to the Second Application, Defendant violated Regulation X, 12 C.F.R. § 1024.41(c)(1)(i).

**ANSWER:**     Denied.

70.     By requesting an order of sheriffs sale, Defendant violated Regulation X, 12 C.F.R. § 1024.41(g).

11

**ANSWER:** Denied.

71. By going forward with the sheriff's sale, Defendant violated Regulation X, 12 C.F.R. § 1024.41(g).

**ANSWER:** Denied.

72. Plaintiff's Third Application was facially complete on or around April 15, 2019 pursuant to 12 C.F.R. § 1024.41(c)(2)(iv).

**ANSWER:** Denied.

73. By failing to provide Plaintiff with notice of a reasonable date to submit additional documents to make the Third Application complete, Defendant violated Regulation X, 12 C.F.R. § 1024.41(6)(2)(ii).

**ANSWER:** Denied.

74. By failing to promptly, upon receipt, evaluate the Third Application to determine if it was complete, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(A).

**ANSWER:** Denied.

75. By failing to evaluate Plaintiff for all loss mitigation options available in response to the Application, Defendant violated Regulation X, 12 C.F.R. § 1024.41(c)(1)(i).

**ANSWER:** Denied.

76. By failing to send Plaintiff notice within thirty days after receiving the Application informing Plaintiff of all loss mitigation options, Defendant violated Regulation X, 12 C.F.R. § 1024.41(c)(1)(ii).

**ANSWER:** Denied.

77. By failing to provide Plaintiff with the correct notices regarding Plaintiff's Third Application, Defendant violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(B).

**ANSWER:** Denied.

78. By failing to inform Plaintiff of the right to appeal the denial of the request for a loan modification, Defendant violated Regulation X, 12 C.F.R. § 1024.41(c)(1)(i).

**ANSWER:** Denied.

79. Defendant regularly fails to evaluate and process its borrowers' loss mitigation applications in compliance with RESPA and Regulation X.

**ANSWER:** Denied.

81637776v.1

80. Defendant regularly fails to administer foreclosure lawsuits it brings against borrowers in compliance with RESPA and Regulation X.

**ANSWER:** Denied.

81. Defendant has engaged in a pattern or practice of non-compliance with the requirements of RESPA and Regulation X.

**ANSWER:** Denied.

82. As a result of Defendant's actions, Plaintiff incurred actual damages, including but not limited to, loss of Plaintiff's home, foreclosure defense costs, increased interest on principal, etc.

**ANSWER:** M&T denies that any of its actions were wrongful, and therefore denies the allegations of this paragraph.

83. As a result of Defendant's actions, Plaintiff suffers severe emotional distress, including anxiety, stress, and sleepless nights.

**ANSWER:** M&T denies that any of its actions were wrongful, and therefore denies the allegation that it caused Baumgardner's purported emotional distress. M&T lacks knowledge or information sufficient to form a belief about the truth of the allegation that Baumgardner actually suffered any emotional distress.

84. Due to these violations, Defendant is liable to Plaintiff for actual damages to be determined at trial, additional damages in the amount of at least $2,000, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f).

**ANSWER:** Denied.

## AFFIRMATIVE DEFENSES

Without waiving Baumgardner's obligation to prove each element of his claims, M&T raises the following affirmative defenses to the complaint:

1. **Failure to State a Claim**. Baumgardner fails to state a claim for a violation of RESPA.

81637776v.1

2.      **Duplicative Requests**. Baumgardner submitted duplicative requests for loss mitigation without curing the default on the Loan, even after M&T reviewed his complete loss mitigation application and sent him a denial letter in February 2019. Therefore, under 12 C.F.R. § 1024.41(i), M&T was not required to continue to comply with the requirements of Section 1024.41 of Regulation X.

3.      **Baumgardner did not qualify for a modification.** Because Baumgardner did not qualify for a modification, any purported violation of the technical requirements of section 1024.41 of Regulation X did not damage Baumgardner.

For the foregoing reasons, M&T respectfully requests that this Court enter judgment in its favor, and for all other relief that is appropriate and just.

M&T BANK

By:   /s/ Douglas R. Sargent
        *One of its Attorneys*

Douglas R. Sargent (0097486)
**LOCKE LORD LLP**
111 South Wacker Drive
Chicago, Illinois 60606
Phone: 312-443-0384
*dsargent@lockelord.com*

## CERTIFICATE OF SERVICE

I, Douglas R. Sargent, an attorney, certify that I caused the foregoing *Answer to Complaint* to be filed and served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on November 15, 2019.

/s/ Douglas R. Sargent

81637776v.1